UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Richard Dennis,
     Plaintiff

     v.                                    Civil No. 06-cv-029-SM
                                                      Opinion No. 2007 DNH 117
Osram Sylvania, Inc.,
     Defendant

**O R D E R**

This case was removed from the New Hampshire Superior Court. The plaintiff, Richard Dennis, is suing Osram Sylvania, Inc., in one count, asserting that the company violated New Hampshire Revised Statutes Annotated ("RSA") § 354-A by terminating his employment in retaliation for his having given deposition testimony critical of the company in another RSA 354-A case brought against it by a former employee. Before the court are defendant's motion for summary judgment (document no. 12) and motions to strike filed by both plaintiff (document no. 13) and defendant (document no. 24). Each motion is duly opposed. For the reasons given, defendant's motion for summary judgment is granted; plaintiff's motion to strike is denied; and defendant's motion to strike is moot.

**Document no. 13**

In his motion to strike, plaintiff challenges various attachments to defense counsel's affidavit (Def.'s Mot. Summ. J., Ex. A), on hearsay and authentication grounds.  He also challenges the declarations of Attorneys Pamela Tracey (id., Ex. C) and Nicole Vient (id., Ex. D) on a variety of grounds.  As it relates to the attachments to Attorney Parent's affidavit, plaintiff's motion is denied for the reasons stated in defendant's objection (document no. 16).  With regard to plaintiff's objections to various statements in the declarations of Attorneys Tracey and Vient, the court will disregard any portions of those declarations that are not properly based upon personal knowledge of relevant facts.  Accordingly, plaintiff's motion to strike (document no. 13) is denied.

**Document no. 24**

In its motion to strike, defendant challenges portions of plaintiff's declaration (Pl.'s Obj. to Summ. J., Ex. E) and deposition errata sheet (id., Ex. F) that refer to a conversation between Dennis and Attorney Paul Beckwith immediately after Dennis was deposed in connection with a previous lawsuit charging Sylvania with retaliation under RSA chapter 354–A.  Defendant argues that the disputed declaration and errata sheet entry are

2

impermissible attempts on plaintiff's part to substantively change the deposition testimony he gave in this case (see Def.'s Mot. Summ. J., Ex. B).  Because the statement by Beckwith that plaintiff seeks to add to the record is not material to the outcome of this case, for reasons that are explained below, defendant's motion to strike (document no. 24) is denied as moot.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." Calero–Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–50 (1986)). "The role of summary judgment is to pierce the boilerplate of the pleadings and provide a means for prompt disposition of cases in which no trial-worthy issue exists." Quinn v. City of Boston, 325 F.3d 18, 28 (1st Cir. 2003) (citing Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).

"Once the movant has served a properly supported motion asserting entitlement to summary judgment, the burden is on the nonmoving party to present evidence showing the existence of a trialworthy issue." Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 39 (1st Cir. 2004) (citing Anderson, 477 U.S. at 248; Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  To meet that burden the nonmoving party, may not rely on "bare allegations in [his or her] unsworn pleadings or in a lawyer's brief." Gulf Coast, 355 F.3d at 39 (citing Rogan v. City of Boston, 267 F.3d 24, 29 (1st Cir. 2001); Maldonado–Denis v. Castillo–Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)).  When ruling on a party's motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  See Lee–Crespo v. Schering–Plough Del Caribe Inc., 354 F.3d 34, 37 (1st Cir. 2003) (citing Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 185 (1st Cir. 2003)).

## Background

Except as otherwise noted, the following facts are not in dispute.  Dennis was employed by Osram Sylvania, Inc. ("Sylvania" or "the company") from August 1995 until he was terminated on March 24, 2004.  At all times relevant to this matter, he was

4

employed in the human resources department.  His duties included
investigating complaints made by Sylvania employees against other
employees and managing the company's internship program.
Sylvania's human resources department was overseen by Geoffrey
Hunt, the company's Senior Vice President of Communications and
Human Resources.  Dennis's direct supervisor was William Franz,
the company's Human Resources Director.  The decision to
terminate Dennis was made by Franz and Hunt.  (Def.'s Mot. Summ.
J., Ex. E (Hunt Decl.) ¶ 5; id., Ex. F (Franz Decl.) ¶ 8.)

     On February 5, 2004, approximately six weeks before he was
terminated, Dennis was deposed in connection with an RSA 354-A
retaliation claim brought against Sylvania by a former employee,
Nancy Green.  Green alleged that after she complained to the
company that she had been sexually harassed by a co-worker named
Oscar Quiroga, two other co-workers, Donna Tilloston and Cathy
Dionne, retaliated against her by harassing her to the point that
she complained about them to her supervisor.  Green also alleged
that Sylvania retaliated against her for making the Quiroga
complaint by failing to investigate her complaint against
Tilloston and Dionne in a timely manner, re-assigning her to a
different work team, failing to inform her of the status of the
investigation into the Tilloston/Dionne complaint, holding a

public meeting about that complaint, and reprimanding her for her
reaction to the meeting.  Green v. Osram Sylvania, Inc., No. 03-
135-JD, slip op. at 9-10 (D.N.H. Apr. 13, 2004).  Dennis was
deposed in the Green case because he, along with Ginny
LaRochelle, investigated Green's complaint against Tilloston and
Dionne.

At Dennis's deposition in Green, Sylvania was represented by
Paul Beckwith, outside legal counsel.  In addition, Sylvania's
in-house Labor and Employment Counsel, Nicole Vient,[1] attended
the deposition.  Dennis testified that: (1) Quiroga told him that
Tilloston and Dionne had harassed Green because Green had more
seniority than they, and, as a result, if Green were to quit, one
or the other of them was more likely to retain her job in the
event of a reduction in force (Def.'s Mot. Summ. J., Ex. K
(Dennis 2/5/04 Dep.) 46, 53); and (2) he had not heard that
Green's problems with Tilloston and Dionne started when she
complained about Quiroga (id. at 45-46).  Subsequently, Dennis
responded in the affirmative to the following question from
Green's attorney: "And the conclusion you came to with Ginny was
that . . . [C]athy and Donna were picking on Nancy because of

---

[1] At the time of the deposition, attorney Vient went by the
name Nicole Buba.

some sort of bumping procedure possibility." (Id. at 80.)  In
other words, Dennis's testimony supported Sylvania's argument
that Tilloston's and Dionne's harassment of Green was unrelated
to Green's prior complaint against Quiroga.[2]

In response to questions from Green's attorney about the
manner in which Sylvania responded to Green's complaint against
Tilloston and Dionne, Dennis testified that he: (1) disagreed
with the company's decision to resolve Green's complaint by
holding a "team meeting" involving Green, Tilloston and Dionne,
rather than by disciplining Tilloston and Dionne (Dennis 2/5/04
Dep. 85, 100); and (2) expressed that disagreement to colleagues,
calling the company's handling of Green's complaint "the
stupidest thing I've heard, stupidest idea I've heard," (id. at
107).  Four days after Dennis's deposition, Osram moved for
summary judgment in Green, and its motion was granted by order
dated April 13, 2004, approximately three weeks after Dennis was
terminated.

---

[2] In his deposition in this case, Dennis confirmed that in
his Green deposition, he testified that the Tilloston/Dionne
harassment was unrelated to Green's complaint against Quiroga.
(Def.'s Mot. Summ. J., Ex. B (Dennis 10/11/06 Dep.) 208–09.)

There are three factual disputes concerning Dennis's
interactions with Attorneys Beckwith and Vient during and
immediately after the <u>Green</u> deposition.  Specifically, Dennis
contends that: (1) at one point during the deposition, Attorney
Vient rolled her eyes, indicating displeasure with his testimony
(Dennis 10/11/06 Dep. 154–57); (2) during a break in the
deposition, Attorney Beckwith instructed him to respond to a
particular line of questions by saying yes, no, or that he could
not recall (<u>id.</u> at 169); and (3) after the deposition, Attorney
Beckwith told him that part of his testimony was helpful to
Sylvania but part of it was not as helpful (Pl.'s Obj. to Summ.
J., Ex. D (Dennis Decl.) ¶ 5; <u>id.,</u> Ex. F (errata sheet for
10/11/06 deposition)).  Attorney Vient states that she does not
recall rolling her eyes (Def.'s Mot. Summ. J., Ex. D (Vient
Decl.) ¶ 8), and Attorney Beckwith states that he did not
instruct Dennis "to limit his deposition answers to yes, no or I
do not recall," (<u>id.,</u> Ex. L (Beckwith Decl.) ¶ 7), and that he
"told Mr. Dennis he did fine [and] never told Mr. Dennis that his
deposition testimony . . . was in any way adverse or harmful to
Sylvania" (<u>id.</u> ¶ 9).  Because these three areas of factual
dispute concern matters that are not material to the outcome of
this case, they do not preclude summary judgment.

8

After Dennis's deposition in <u>Green</u>, Attorney Beckwith telephoned Sylvania's Senior Labor and Employment Counsel, Pamela Tracey, and "told her that . . . Dennis' deposition went fine . . . [and] that, based on Mr. Dennis['s] and the other witness testimony, Sylvania would be entitled to summary judgment in the Green litigation." (Beckwith Decl. ¶ 10; <u>see also</u> Def.'s Mot. Summ. J., Ex. C (Tracey Decl.) ¶ 6.) Moreover, Attorney Beckwith "never told Attorney Tracey or any other Sylvania employee that the substance of Mr. Dennis' testimony was in any way harmful to Sylvania." (Beckwith Decl. ¶ 10.) At his deposition in this case, Dennis conceded that he had "no evidence" that Attorney Beckwith reported to anyone at Sylvania that his deposition testimony had harmed the company's case in <u>Green</u>. (Dennis 10/11/06 Dep. 209-10.) Finally, Attorney Beckwith was not involved in any way in the decision to terminate Dennis. (Beckwith Decl. ¶ 13.)

Similarly, Attorney Vient did not report to her superior, Attorney Tracey, that Dennis "had provided any adverse testimony in his deposition," (Vient Decl. ¶ 8), and did not tell anyone else at Sylvania that "Dennis's deposition testimony was in any way adverse or harmful to the company," (Vient Decl. ¶ 15). At his deposition in this case, Dennis conceded that he had no

9

evidence other than the "time frame" to substantiate his belief
that Attorney Vient reported to anyone at Sylvania that his
deposition testimony had harmed the company's case in <u>Green</u>.
(Dennis 10/11/06 Dep. 210).  Like Attorney Beckwith, Attorney
Vient was not involved in the decision to terminate Dennis's
employment.  (Vient Decl. ¶ 13.)

As noted above, the decision to terminate Dennis was made by
Franz and Hunt.  At the time they made that decision, neither
Franz nor Hunt knew anything about Dennis's deposition testimony
in the <u>Green</u> case (Franz Decl. ¶ 4; Hunt Decl. ¶ 7), and neither
had been told that Dennis had provided testimony that was in any
way adverse to Sylvania (Franz Decl. ¶ 4; Hunt Decl. ¶ 8).

The letter notifying Dennis of his termination did not give
a reason.  (Pl.'s Obj. to Summ. J., Ex. Z.)  In declarations
submitted in support of defendant's motion for summary judgment,
Franz and Hunt both state that they terminated Dennis because the
human resources department was undergoing a reduction in force,
and given the need to eliminate an employee, they preferred to
retain Leah Weinberg rather than Dennis, due to Dennis's history
of inappropriate conduct.  (Franz Decl. ¶¶ 8-9; Hunt Decl. ¶ 5.)

In April 2001, Kim Serrechia, an intern who reported directly to Dennis, complained to Sylvania about Dennis's behavior toward her.  (Def.'s Mot. Summ. J., Ex. A2.)  That complaint resulted in a written warning in which Dennis was reprimanded for inappropriate use of company e-mail and failure to use appropriate managerial judgment.  (<u>Id.</u>, Ex. A3.)  The written warning was placed in Dennis's personnel file.  (<u>Id.</u>)

On January 28, 2004, approximately one week before Dennis's deposition in <u>Green</u>, Sylvania received a complaint about Dennis from Miguel Molina, a former intern who was under consideration for another internship with the company.  (Def.'s Mot. Summ. J., Ex. A4.)  Molina's complaint stemmed from a face-to-face encounter with Dennis and a subsequent telephone conversation with him.  Molina's complaint resulted in an investigation initiated by Hunt (Hunt Decl. ¶ 3; Tracey Decl. ¶ 8), directed by Attorney Tracey (Tracey Decl. ¶ 9; Vient Decl. ¶ 10), and conducted by Attorney Vient (Tracey Decl. ¶ 9; Vient Decl. ¶ 10).  Attorney Vient conducted her first interview the day after Dennis gave his deposition in <u>Green</u>.  (Def.'s Mot. Summ. J., Ex. A5.)  Based upon Attorney Vient's findings, Attorney Tracey determined that Dennis's conduct was inappropriate (Tracey Decl. ¶ 11), and further determined, in consultation with Franz and Hunt, that a

11

written warning should be given to Dennis and placed in his
personnel file (Tracey Decl. ¶ 12; Franz Decl. ¶ 6; Hunt Decl. ¶
4).

On February 23, Franz met with Dennis to discuss the written
warning.  (Def.'s Mot. Summ. J., Ex. A6.)  At that meeting,
Dennis refused to sign the warning and told Franz that he viewed
the Molina investigation and the resulting warning as retaliation
for his deposition testimony in <u>Green</u>.  (Dennis Decl. ¶ 31; Franz
Decl. ¶ 7.)  According to Dennis, when he accused Franz of
retaliating against him for his deposition testimony in <u>Green</u>,
Franz "looked away . . . and said he knew nothing about that."
(Dennis Decl. ¶ 32.)  In Dennis's view, Franz's failure to look
him in the eye when Franz said he did not know about the <u>Green</u>
deposition demonstrated that he, Franz, was not telling the
truth.  (Dennis 10/11/06 Dep. 75-76.)  However, Dennis concedes
that his perception of Franz's body language is the only evidence
available to support his claim that Franz knew about his
testimony in the <u>Green</u> deposition.  (<u>Id.</u> at 77.)  Franz does not
recall looking away during his conversation with Dennis (Franz
Decl. ¶ 7), but does recall telling Dennis he knew nothing about
his <u>Green</u> deposition (<u>id.</u>).

**Discussion**

Dennis claims that his termination violated RSA 354-A:19, because Sylvania fired him due to the company's displeasure with his deposition testimony in <u>Green</u>.  Defendant moves for summary judgment, arguing that: (1) plaintiff cannot prove a <u>prima facie</u> case of retaliation because there is neither evidence of a causal connection between plaintiff's deposition testimony and his termination, nor evidence from which a reasonable inference of causation may be drawn; and (2) even if plaintiff can prove a prima facie case, he was terminated for a legitimate non-discriminatory reason, and cannot prove that defendant's proffered reasons were pretextual.  Plaintiff defends by pointing to more than a dozen disputed factual matters which, in his view, preclude summary judgment.  These factual disputes generally fall into three categories: (1) some are related to the validity of the disciplinary action taken against Dennis in the Serrechia matter, and Dennis's claim that the company promised to expunge records of the Serrechia discipline from his personnel file; (2) others concern the correctness of the disciplinary action taken against Dennis in the Molina matter; and (3) others concern the harmfulness to Sylvania of Dennis's deposition testimony in <u>Green</u> and the responses of Attorneys Beckwith and Vient to that testimony during and after the deposition.  Plaintiff also

hypothesizes that there may be material factual disputes concerning Leah Weinberg's compliance with Sylvania's human resources standards, but he does not identify any particular disputes, on grounds that he has yet to receive pertinent discovery.  As discussed more fully below, however, because it is undisputed that the Sylvania decisionmakers who terminated plaintiff knew nothing about his deposition testimony in <u>Green</u>, none of the disputes plaintiff identifies concern facts that are material.  <u>See</u> <u>Calero-Cerezo</u>, 355 F.3d at 19.

Under New Hampshire law, "[i]t shall be an unlawful discriminatory practice for any person engaged in activity to which [RSA 354-A] applies to discharge . . . any person . . . because he has . . . testified or assisted in any proceeding under this chapter."  RSA 354-A:19.  It is well established that in matters of first impression arising under RSA chapter 354-A, the New Hampshire Supreme Court "rel[ies] upon cases developed under Title VII to aid in [its] analysis."  <u>N.H. Dep't of Corr. v. Butland</u>, 147 N.H. 676, 680 (2002) (citing <u>Scarborough v. Arnold</u>, 117 N.H. 803, 807 (1977)).  To prevail upon a retaliation claim under RSA chapter 354-A, a plaintiff must "demonstrate that: (1) [he] engaged in a statutorily-protected activity; (2) [he] suffered an adverse employment action; and (3) the protected

activity and the adverse employment action were causally connected." <u>Madeja v. MPB Corp.</u>, 149 N.H. 371, 378 (2003) (citing <u>Marrero v. Goya  of P.R., Inc.</u>, 304 F.3d 7, 22 (1st Cir. 2002); <u>Montplaisir</u>, 147 N.H. 297, 300-01 (2001)).

In New Hampshire, if "there is only circumstantial evidence of retaliation, then the 'pretext' approach [to proving retaliation] applies." <u>Montplaisir</u>, 147 N.H. at 300 (citing <u>Texas Dept. of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-05 (1973)).[3] "Under the 'pretext' or <u>McDonnell Douglas</u> scheme, the employee bears the initial burden of establishing a <u>prima facie</u> case of unlawful conduct." <u>Montplaisir</u>, 147 N.H. at 300-01

---

[3] Plaintiff, relying upon <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003), argues that he is also entitled to a "mixed motive" analysis, <u>see</u> <u>Montplaisir</u>, 147 N.H. at 301 (explaining that under "mixed motive" analysis, the "burden of persuasion shifts to the employer to show that despite [its] retaliatory animus, it would have made the same adverse employment decision for legitimate, non-retaliatory reasons") (citing <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 277-78 (1989) (O'Connor, J., concurring)).  In plaintiff's view, the New Hampshire Supreme Court, if asked to do so, would adopt the United States Supreme Court's position and hold that "direct evidence of [retaliation] is not required in mixed-motive cases." <u>Desert Palace</u>, 539 U.S. at 101-02.  That may be, but because plaintiff has not produced even circumstantial evidence of retaliatory animus, as discussed more fully below, it is not necessary to predict whether the New Hampshire Supreme Court would adopt the reasoning of <u>Desert Palace</u>.

(citation omitted).  "Establishing a <u>prima facie</u> case of
retaliation creates a presumption that the employer unlawfully
retaliated against the employee."  <u>Id.</u> at 301 (citation omitted).
"This presumption places a burden upon the employer to rebut the
<u>prima facie</u> case – <u>i.e.</u>, the burden to produce evidence that the
adverse employment action was taken for legitimate, non-
retaliatory reasons."  <u>Id.</u> (citing <u>St. Mary's Honor Ctr. v.
Hicks</u>, 509 U.S. 502, 506–07 (1993)).  "The burden placed upon the
employer is only a burden of production; the employee retains the
burden of persuasion."  <u>Id.</u> (citations omitted).

    "If the employer satisfies its burden of production, the
presumption raised by the <u>prima facie</u> case is rebutted and 'drops
from the case.'"  <u>Id.</u> (citation omitted).  "The employee then has
the opportunity to show that the employer's proffered reason was
not the true reason for the adverse employment action and that
retaliation was."  <u>Id.</u> (citation omitted).  "The employee may do
this either indirectly by showing that the employer's stated
reasons were not credible, or directly by showing that the
adverse employment action was more likely motivated by
retaliation."  <u>Id.</u> (citation omitted).  "Under the 'pretext'
approach, the employee retains the ultimate burden of persuading

16

the trier of fact that he or she was the victim of unlawful retaliation." Id. (citation omitted).

Step one of the McDonnell Douglas analysis, asserting a prima facie case, involves "a small showing that is not onerous and is easily made." Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 38 (1st Cir. 2003) (quoting Koseris v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003)). Here, plaintiff has shown that he engaged in protected activity, i.e., provided deposition testimony in Green, and that he suffered an adverse employment action — his termination. Thus, he has established the first two elements of his prima facie case. But he has failed to establish the third element, because he has produced no evidence that Franz or Hunt had any knowledge of his protected activity before deciding to terminate his employment. See Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 84–85 (1st Cir. 2006) (holding that plaintiff failed to establish prima facie case because he produced "no evidence that . . . the CTI employee who discharged [him] had any knowledge that [he had engaged in protected activity]"); Koseris, 331 F.3d at 217; Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 57–58 (1st Cir. 2000); King v. Town of Hanover, 116 F.3d 965, 968 (1st Cir. 1997).

17

The <u>prima facie</u> case requirement is meant to impose a light
burden upon a plaintiff, and, for the sake of complete
consideration, the court will stretch the point and assume for a
moment that the elapsed time between Dennis's deposition and the
adverse employment action was sufficient to support an inference
of causation, and will assume, as well, that plaintiff has
established a <u>prima facie</u> case.  <u>See</u> <u>Madeja</u>, 149 N.H. at 383
(holding that plaintiff in RSA 354-A retaliation case established
<u>prima facie</u> case by producing evidence that she filed a sexual
harassment complaint and was terminated eight days later).

Defendant, in turn, has met its burden of producing evidence
sufficient to show that it terminated plaintiff for legitimate
non-retaliatory reasons, that is, (1) Dennis's poor work
performance, as evidenced by the disciplinary actions imposed in
the Serrechia and Molina matters, and (2) Franz's desire to
retain an employee other than Dennis, when he was required to
choose between them as part of a reduction in force.  Because
defendant established legitimate non-discriminatory reasons for
the decision to terminate plaintiff, resolution of this case
would turn on plaintiff's ability to meet his burden at step
three of the <u>McDonnell Douglas</u> analysis, if his failure to
establish a <u>prima facie</u> case is ignored.

18

For his part, plaintiff points to more than a dozen areas of
factual dispute that, in his view, preclude summary judgment.
These factual disputes involve either the feedback Attorneys
Beckwith and Vient gave him concerning his deposition testimony
in <u>Green</u> or the legitimacy of the reasons Sylvania has given for
his termination.  According to Dennis, the negative reaction of
Attorneys Beckwith and Vient to his <u>Green</u> deposition, in
conjunction with the alleged falsity of the reasons given for his
termination, establish, for purposes of the third prong of
<u>McDonnell Douglas</u>, that the reasons given for his termination
were pretextual and advanced solely to mask a retaliatory motive.

While an employee may, in some circumstances, prove that an
adverse employment decision was motivated by retaliatory animus
"indirectly by showing that the employer's stated reasons were
not credible," <u>Montplaisir</u>, 147 N.H. at 301, proof of pretext in
this case is not sufficient to demonstrate retaliatory animus.
In this case, it is undisputed that: (1) whether or not they
conveyed a negative reaction to Dennis during or after his <u>Green</u>
deposition, Attorneys Beckwith and Vient said nothing negative
about plaintiff's deposition to anyone at Sylvania; (2) the
decision to terminate plaintiff was made by Franz and Hunt; and
(3) Franz and Hunt knew nothing about plaintiff's <u>Green</u>

19

deposition.[4]  Those undisputed facts establish, as a matter of law, that plaintiff's termination was not the result of retaliatory animus.  Franz and Hunt could not have retaliated against plaintiff for conduct they knew nothing about.

Because Franz and Hunt knew nothing about plaintiff's <u>Green</u> deposition — and plaintiff has produced no evidence to create a trialworthy factual dispute on this point — none of the disputed facts concerning either the responses of Attorneys Beckwith and Vient to Dennis's <u>Green</u> deposition or Sylvania's reasons for plaintiff's termination are material to the resolution of this case.  <u>See</u> <u>Calero-Cerezo</u>, 355 F. 3d at 19.  That is, even if all of those factual disputes were resolved in plaintiff's favor, defendant would still be entitled to judgment as a matter of law. At most, plaintiff might be able to prove that the reasons given

---

[4] As noted, Dennis's deposition in this case includes his assertion that Franz "looked away" when Dennis accused him of disciplining him for the Molina matter in retaliation for his <u>Green</u> deposition, and Dennis's interpretation of that body language to indicate that Franz was admitting knowledge of the <u>Green</u> deposition.  Franz does not recall that he looked away from Dennis.  Because plaintiff's "evidence" of Franz's knowledge was not mentioned in his objection to summary judgment, there is no need to consider it here.  However, if that evidence were relied on in plaintiff's objection to summary judgment, the court would have little trouble concluding that even if Franz did "look away," no reasonable jury could conclude, based upon that evidence alone, that Franz knew about Dennis's deposition testimony in <u>Green</u>.

for his termination were not the real reasons, but because Franz
and Hunt knew nothing about plaintiff's <u>Green</u> deposition, the
real reason for his termination could not have been his protected
conduct, and so his retaliation claim based upon that deposition
testimony necessarily fails.

Pretext can give rise to an inference of retaliation under
the right factual circumstances, but it cannot do so here, where
the undisputed factual record demonstrates that retaliation for
plaintiff's <u>Green</u> deposition was a logical impossibility.[5]

Dennis attempts to counter the undisputed fact that neither
Franz nor Hunt knew about his <u>Green</u> deposition by advancing the
following theory: (1) as evidenced by her eye-rolling during the
deposition – and nothing more – Attorney Vient demonstrated her
disapproval of his testimony; (2) Attorney Vient necessarily
disapproved of plaintiff's testimony because it was harmful to

---

[5] Because retaliation for Dennis's <u>Green</u> deposition was a
logical impossibility, the company's reliance upon the Serrechia
matter as partial grounds for his termination, despite its
alleged promise to expunge that incident from Dennis's personnel
file, is not material.  Evidence that Sylvania broke its promise
to expunge the Serrechia matter from Dennis's personnel file
could be evidence of pretext, and might even give rise to an
inference of retaliation, but <u>not</u> retaliation for Dennis's <u>Green</u>
deposition, which is Dennis's claim in this case.

her largest "client," the Sylvania human relations department;[6] and (3) based upon her disapproval, Attorney Vient retaliated against plaintiff by manipulating her investigation into the Molina matter in such a way as to lead Attorney Tracey to cause Franz and Hunt to take disciplinary action against plaintiff which, in turn, led to his dismissal approximately a month after the tainted disciplinary action Attorney Vient prompted by manipulating the results of her investigation.  To support his theory, plaintiff relies upon Cariglia v. Hertz Equipment Rental Corp., 363 F.3d 77 (1st Cir. 2004).

In Cariglia, an age-discrimination case brought under Massachusetts State law, the First Circuit held that "a corporation can be . . . liable for [age] discrimination when neutral decisionmakers, free of any age-based animus, rely on information that is manipulated by another employee who harbors age-based discriminatory animus." Id. at 79.  However, even if the New Hampshire Supreme Court were to adopt and apply the rule in Cariglia to retaliation cases brought under RSA 354-A,

---

[6] While Dennis did make several comments critical of Sylvania at his deposition, his testimony does not appear to have been particularly harmful to Sylvania's legal position, and actually strongly supported the company's position on a key issue of retaliation.

defendant in this case would still be entitled to judgment as a
matter of law, given the substantial factual differences between
Cariglia and this case.

     For example, in Cariglia, there was substantial evidence of
discriminatory animus on the part of the employee who manipulated
the information upon which the actual decisionmakers relied.   Id.
at 80.  Here, by contrast, the only evidence of Attorney Vient's
alleged retaliatory animus is the eye-rolling that Dennis
observed during his Green deposition; he concedes that he has no
evidence that Attorney Vient ever said anything negative to him
or anyone else about his Green deposition.  More importantly, the
investigation in Cariglia that produced the information that
resulted in the plaintiff's termination was initiated by the
employee with discriminatory animus, id., while here, the
investigation Attorney Vient conducted was initiated by Hunt and
overseen by Attorney Tracey.  Finally, in contrast with Cariglia,
id. at 86-87, there is no evidence that Attorney Vient either
concealed relevant evidence from Attorney Tracey or provided her
with false evidence concerning the Molina matter.  Accordingly,
even if the New Hampshire Supreme Court were to adopt and apply
the theory of liability described in Cariglia, Dennis has not
identified a trialworthy factual dispute which, if resolved in

23

his favor, would permit a reasonable jury to conclude that Attorney Vient manipulated her investigation into the Molina matter in order to retaliate against him for his <u>Green</u> testimony.

Because plaintiff has failed to establish a <u>prima facie</u> case with respect to causation, and, alternatively, because he has failed to identify any disputed factual matter which, if resolved in his favor, would allow him to carry his burden at the third step of the <u>McDonnell Douglass</u> analysis, and, because on the undisputed factual record, defendant is entitled to judgment as a matter of law, defendant's motion for summary judgment must be granted.

## Conclusion

For the reasons given, plaintiff's motion to strike (document no. 13) is denied; defendant's motion to strike (document no. 24) is moot; and defendant's motion for summary judgment (document no. 12) is granted.  Because defendant's motion for summary judgment is granted, all other pending motions are denied as moot.  The clerk of court shall enter judgment in accordance with this order and close the case.

24

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

September 24, 2007

cc:  Nancy Richards-Stower, Esq.
     Bruce W. Felmly, Esq.
     Jennifer L. Parent, Esq.
     Cathryn E. Vaughn, Esq.